ENTERED ON THE DOCKET
DATE: 3-17-92

FILED
U.S. DISTRICT COURT
· · · KNSAS

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS   MAR 16   12 43 PM '92

· ·    · LOACH

7S/, Kerry Martinez
· · · .S.

HAROLD L. SIMMONS, et al.,                )
                          Plaintiffs,     )
                                          )          CIVIL ACTION
v.                                        )
                                          )          No. 88-2603-O
THE CITY OF KANSAS CITY, KANSAS,          )
et al.,                                   )
                          Defendants.     )
_____)

MEMORANDUM AND ORDER

This matter is before the court on:  (1) defendants' motion for summary judgment (Doc. #141); (2) plaintiffs' motion to overrule the motion for summary judgment (Doc. #164); and (3) plaintiffs' motion for the application of the Civil Rights Act of 1991 and request to conform the pretrial order (Doc. #172). Having reviewed the motions, the court is now prepared to rule.

I.  Factual background

The court finds the following facts uncontroverted for purposes of these motions:

1.  Plaintiffs are nine black police officers in the Kansas City, Kansas Police Department ("KCKPD") who, individually and on behalf of a certified class consisting of all black officers of the KCKPD on or after December 7, 1986, allege that the City of Kansas City, Kansas' ("KCK's") police promotion testing procedures are racially discriminatory.  Plaintiffs seek redress of their rights under 42 U.S.C. § 1981, 42 U.S.C. § 1983, 42 U.S.C. § 2000e

181

et seq., 42 U.S.C. § 1988 and pursuant to the Thirteenth and Fourteenth Amendments to the United States Constitution.

2. Defendant KCK is a city of the first class. Defendant David T. Isabell is the KCK City Administrator. Defendant Allan E. Meyers is the former Chief of Police for KCK.

3. Nonaligned party Fraternal Order of Police Lodge 4 ("FOP") is the recognized employee organization of the KCKPD, and is a party to the Memoranda of Understanding under which the terms of promotional eligibility are determined.

4. Since 1977, KCK and the FOP have negotiated a promotion testing and ranking procedure for the positions of police sergeant, detective, and lieutenant. This procedure, set out in Article 11 of the FOP/KCK Memoranda of Understanding, provides for a three-part testing procedure to determine merit promotion qualifications. The testing procedure includes:

> a) A written examination, separately administered for the classifications of sergeant, detective, and lieutenant, composed of 100 questions;
>
> b) Oral interviews by a panel consisting of three officers selected by the Chief of Police and three officers selected jointly by the Chief and FOP president (for sergeants and detectives) and by a panel, selected by the Chief, consisting of six officers holding the rank of lieutenant or above (for lieutenant). In determining the total score

- 2 -

> for each candidate's interview, the high and low
> scores are discarded;
>
> c) Supervisor's evaluation - each candidate's
> supervisor is required to submit an evaluation
> report to the testing firm on a form agreed upon by
> KCK and the FOP.

5. Based on the written examination, oral interview,
and supervisor's evaluation, each candidate is given an overall
rating. In the April 22, 1987 Memoranda of Understanding, the
weight assigned to each component was as follows: 50% to written
examination; 40% to oral interview; and 10% to supervisor's
evaluation. In prior Memoranda, KCK and the FOP had negotiated
other relative weighing percentages.

6. Officers are placed on a "promotion eligibility
list" in the order of their overall rating. The Memoranda of
Understanding provides as follows: "Promotions shall be made by
the City Administrator with the advice of the Chief from the
appropriate eligibility list in accordance with the candidate's
position thereon. An officer may be passed over for promotion for
sufficient cause in which case each officer passed over shall be
advised in writing of the reasons therefor, with a copy to the
Lodge."

7. Defendant KCK contracted with Midwest Research
Institute ("MRI") to administer the personal evaluation and
promotion system for the KCKPD. MRI developed the ranked promotion
eligibility list and has administered the program since its

- 3 -

AO 72A
(Rev. 8/82)

inception. Specific work of MRI staff included: (a) preparation of the written test questions to be taken from law enforcement textbooks as well as KCKPD regulations, general and special orders, field standard operating procedures and investigative standard operating procedures; (b) setting standards for the oral interviews including discussion of recommended interview techniques, scoring instructions, the meanings of scores, administration and relevant matters; (c) providing the department with supervisors' evaluation forms; (d) scoring the results on the three components of the promotion testing procedures and providing the Chief and FOP president with a ranked promotion eligibility list determined by composite overall score; and (e) mailing individual reports to each candidate for promotion which provide information and scores on each component of the system and final relative standing.

8. Plaintiffs complain that the three-part testing procedure has had, and continues to have, a discriminatory impact on black candidates.

9. Employment and promotion statistics provided by the parties are somewhat confusing. Although Blacks appear to have been well represented in most categories since 1977, there has been a consistent underrepresentation of Blacks in the sergeant category. With respect to the results of the three-part testing procedures, the statistics indicate that the mean written test scores for Black candidates have been consistently lower than those of White candidates (during the period from 1977 to 1987). Further, the supervisor evaluation scores for Black candidates

appear to be consistently lower than those for White candidates (during the period from 1979 to 1987).

10. According to plaintiffs' expert, Merlyne Hines-Starr, Ph.D., there has been an inequitable promotion rate for minority policeman during at least six years of the period between 1977 and 1986. Specifically, Dr. Hines-Starr testified that the promotion rate for Black officers was not in compliance with the 4/5th or 80% guideline of the EEOC for the six years in question.

11. Plaintiff's expert did not examine or analyze the specific components of the three-part testing procedure.

12. The individual plaintiffs have varying "lay" opinions as to which test component is the cause of the alleged discriminatory impact.


## II.  Standards for summary judgment

A moving party is entitled to summary judgment only when the evidence indicates that no genuine issue of material fact exists. Fed. R. Civ. P. 56(c); Maughan v. SW Servicing, Inc., 758 F.2d 1381, 1387 (10th Cir. 1985). The requirement of a "genuine" issue of fact means that the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The moving party has the burden of showing the absence of a genuine issue of material fact. This burden "may be discharged by 'showing' -- that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case." Celotex Corp.

- 5 -

v. Catrett, 477 U.S. 317, 325 (1986). "[A] party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." Anderson, 474 U.S. at 256. Thus, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. Id. The court must consider factual inferences tending to show triable issues in the light most favorable to the party opposing the motion. Bee v. Greaves, 744 F.2d 1387, 1396 (10th Cir. 1984), cert. denied, 469 U.S. 1214 (1985).

## III. Discussion

### A. Plaintiffs' Title VII disparate impact claim

The court first turns to plaintiffs' disparate impact claim. Defendants, in their motion for summary judgment, attack plaintiffs' ability to establish a prima facie case of disparate impact. Specifically, defendants contend that plaintiffs have failed to demonstrate a causal link between the individual components of the challenged testing procedure and the alleged statistical disparities between Black and White candidates. In response, plaintiffs allege that they are challenging all three components of the testing procedure. Plaintiffs contend that all three components, separately or combined, "represent a barrier to promotion." Further, plaintiffs note that defendants have not

- 6 -

challenged the statistical disparities reported by plaintiffs' expert.

In <u>Ortega v. Safeway Stores, Inc.</u>, 943 F.2d 1230 (10th Cir. 1991), the Tenth Circuit recently discussed the nature of discriminatory impact claims:

> A claim of disparate impact, unlike a claim of disparate treatment, does not require a finding of intentional discrimination. Indeed, "the necessary premise of the disparate impact approach is that some employment practices, adopted without a deliberately discriminatory motive, may in operation be functionally equivalent to intentional discrimination."   (Citations omitted.)
>
> To establish a prima facie case of disparate impact discrimination, plaintiffs must show that a specific identifiable employment practice or policy caused a significant disparate impact on a protected group.   (citations omitted).   Plaintiffs may rely on statistics to show that the challenged practice or policy has the requisite disparate impact.   (citations omitted).   However, . . . any statistical analysis must involve the appropriate comparables, (citation omitted), and must "cross a threshold of reliability before it can establish even a prima facie case of disparate impact."   (citations omitted).   Additionally, an employer's use of subjective criteria in making employment decisions is susceptible to challenge under disparate impact principles.   (Citations omitted.)

<u>Id.</u> at 1242-43.

Reviewing the statistical evidence presented by the plaintiffs, the court finds that issues of material fact exist which preclude summary judgment. Although plaintiffs' expert has admittedly not identified which of the three testing components is responsible for the alleged disparate impact, she has arguably

demonstrated that the testing procedure, as a whole, has had a disparate impact on Black candidates.[1]  Further, the statistical evidence before the court appears to indicate that at least two of the three test components have had a consistent disparate impact on Black candidates.    Although it remains to be seen whether plaintiffs can establish a prima facie case at trial, the court finds that the plaintiffs have presented sufficient statistical evidence to create a genuine issue of material fact as to the impact of the challenged testing procedure.[2]    See Bridgeport Guardians, Inc. v. City of Bridgeport, 933 F.2d 1140, 1146 (2d Cir. 1991) ("In contending that a test used to determine promotions violates Title VII's prohibition against racial discrimination, a plaintiff may establish a prima facie case of disparate impact by showing that use of the test causes the selection of applicants for promotion in a racial pattern that significantly differs from that of the pool of applicants."); Drake v. City of Fort Collins, 927 F.2d 1156, 1161 (10th Cir. 1991) ("Statistics may be used to show an unfair impact resulting from the complained of practice.").

---

[1]  The instant case is distinguishable from Gilty v. Village of Oak Park, 919 F.2d 1247 (7th Cir. 1990), a case cited by defendants.   In Gilty, the court determined that the plaintiff was challenging only one component of a three-part testing procedure. Id. at 1254.   Further, the plaintiff's statistical evidence was flawed because it focused only on underrepresentation statistics. Id.

[2]  The court notes that it was provided little guidance from either side in interpreting the statistical evidence.  It therefore remains to be seen whether plaintiff's statistical data can withstand challenge from the defendants at trial.

AO 72A
(Rev. 8/82)

Defendants' motion for summary judgment is therefore denied as to plaintiffs' disparate impact claim.

### B.   Plaintiffs' Title VII disparate treatment claim

Defendants also seek summary judgment with respect to plaintiffs' disparate treatment claim. In light of the statistical evidence produced by plaintiffs, the court will, out of an abundance of caution, deny defendants' motion and allow the disparate treatment claim to proceed to trial. See McAlester v. United Air Lines, Inc., 851 F.2d 1249, 1258 (10th Cir. 1988) (acknowledging use of statistics in disparate treatment cases); Bernard v. Gulf Oil Corp., 841 F.2d 547, 568 (5th Cir. 1988) ("Statistics establishing a great disparity between [defendant's] treatment of blacks and whites may alone justify an inference of discriminatory motive."); Palmer v. Shultz, 815 F.2d 84, 90-97 (D.C. Cir. 1987) (discussing, at length, the use of statistics in pattern or practice disparate treatment cases); EEOC v. Jordan Graphics, Co., 769 F. Supp. 1357, 1382-84 (W.D.N.C. 1991) (discussing use of statistics in pattern and practice cases). However, the court notes that it has serious doubts about plaintiffs' disparate treatment claim in light of the ambiguities in the statistical evidence and plaintiffs' failure to produce any substantial "historical, individual or circumstantial evidence." Bernard, 841 F.2d at 568.

### C.   Plaintiffs' § 1981 claim

Plaintiffs have also asserted a claim of race discrimination pursuant to the Civil Rights Act of 1866, 42 U.S.C.

- 9 -

AO 72A
(Rev. 8/82)

§ 1981.    Specifically,    plaintiffs    claim    that    the    alleged discriminatory testing procedure prevented them from being promoted and thereby entering into new contracts of employment with the defendants.  Defendants challenge the validity of plaintiffs' claim and contend that the promotions in question would not have given plaintiffs the opportunity to enter into "new and distinct" relationships with the defendants.

In Patterson v. McLean, 491 U.S. 164, 109 S. Ct. 2363 (1989), the Supreme Court limited the scope of actionable claims under section 1981.  Resting on the narrow language of section 1981 and noting the need for harmony with the conciliation procedures of Title VII, the Court limited the reach of section 1981 to conduct involving    the    "mak[ing]    and    enforce[ment]"    of    contracts. Patterson, 109 S. Ct. at 2372.  Accordingly, an employee may retain an actionable claim under section 1981 for "failure to promote" only where "the nature of the change in position . . . rises to the level of an opportunity for a new and distinct relation between the employee and the employer . . . ."  Id. at 2377.

Reviewing    the    evidence    presented    by    the    parties concerning the positions of sergeant, detective and lieutenant, the court rejects plaintiffs' argument that the promotions in question represented an opportunity for plaintiffs to enter into new contracts with the defendants.  Id.; see Greggs v. Hillman Distrib. Co., 719 F. Supp. 552, 554-55 (S.D. Tex. 1989) (noting that plaintiff alleged no facts which would show that promotion would have resulted in a new and distinct relation between plaintiff and

employer). Although promotions to the positions in question would have afforded plaintiffs wage increases and some changes in job tasks, there is no evidence to indicate that they would have, in any significant manner, changed plaintiffs' relations with the defendants. <u>Patterson</u>, 109 S. Ct. at 2377. Defendants' motion for summary judgment is therefore granted with respect to plaintiffs' section 1981 claim.

### D. Plaintiffs' § 1983 claims

Plaintiffs, in their complaint, have also alleged that they are seeking relief pursuant to 42 U.S.C. § 1983. However, plaintiffs have made it nearly impossible for the defendants or the court to legitimately address this claim. Plaintiffs' complaint does not allege an independent legal basis for a section 1983 claim, nor does it specifically describe the alleged factual basis for the section 1983 claim. See <u>Drake v. City of Fort Collins</u>, 927 F.2d 1156, 1162 (10th Cir. 1991). Likewise, the pretrial order wholly fails to describe plaintiffs' section 1983 claim. Although purposeful discrimination on the part of the defendants would give rise to a section 1983 claim, see <u>Andrews v. City of Philadelphia</u>, 895 F.2d 1469, 1478 (3d Cir. 1990), plaintiffs' failure to describe the legal and factual basis for their claim entitles defendants to summary judgment.[3]

---

[3] In their reply to the defendants motion for summary judgment, plaintiffs allege: (1) that defendant Meyers "had the discretion to reach down the list and elevate a qualified black officer candidate to prevent the discrimination"; and (2) defendants Meyers and Isabell "were on notice long before this law suit of the problem with the promotion system but failed to do anything about it." Whether this is plaintiffs' factual basis for

- 11 -

Even assuming that plaintiffs have alleged a legitimate legal and factual basis for their section 1983 claim, the court finds that the defendants are entitled to summary judgment. Individual defendants Meyers and Isabell have raised the defense of qualified immunity and plaintiffs have wholly failed to convince the court that the law applicable to their section 1983 claim was clearly established at the time of the conduct at issue. See Hannula v. City of Lakewood, 907 F.2d 129, 131 (10th Cir. 1990); Wulf v. City of Wichita, 883 F.2d 842, 864 (10th Cir. 1989); Lutz v. Weld County School District No. 6, 784 F.2d 340, 342-43 (10th Cir. 1986). Moreover, plaintiffs have not even demonstrated that defendants Meyers and Isabell were performing discretionary functions that would provide a basis for a section 1983 claim. See Busby v. City of Orlando, 931 F.2d 764, 773 (11th Cir. 1991). With respect to the defendant KCK, defendants have failed to offer any evidence that would create a triable issue of fact under either the "policymaker" or "custom"[4] approaches to municipal liability. See Brown v. City of Fort Lauderdale, 923 F.2d 1474, 1479-81 (11th Cir. 1991).

---

their § 1983 claim is unclear. Nonetheless, plaintiffs have provided no evidence to support either allegation. Accordingly, defendants are entitled to summary judgment.

[4] With respect to the "custom" approach, although defendant KCK was certainly aware of the testing procedure challenged by plaintiffs, there is simply no evidence that would indicate that KCK was aware, prior to this lawsuit, of the alleged disparate impact of the procedure.

- 12 -

### E.    Plaintiffs' Thirteenth Amendment claim

In their reply brief, plaintiffs acknowledge that they have no valid claim under the Thirteenth Amendment.  Accordingly, the claim is hereby dismissed.

### F.    Damages

Plaintiffs acknowledge that they are not seeking damages for embarrassment or humiliation under Title VII.  Accordingly, defendants' arguments with respect to this issue are moot.

### G.    Plaintiffs' motion to overrule defendants' motion

Subsequent to the defendants filing their motion for summary judgment, plaintiffs filed a motion entitled "PLAINTIFFS' MOTION FOR AN ORDER OVERRULING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT FOR NONCOMPLIANCE WITH RULE 56."  Having reviewed the motion, the court finds no merit thereto.  Accordingly, the motion is denied.

### H.    Applicability of Civil Rights Act of 1991

Plaintiffs have also filed a motion to amend the pretrial to conform to the provisions of the Civil Rights Act of 1991.  This court has previously ruled that the Civil Rights Act of 1991 does not apply retroactively.  Lange v. Cigna Ind. Fin. Serv. Co., No. 90-2053 (D. Kan., Feb. 11, 1992).  Accordingly, plaintiffs' motion is denied.

IT IS THEREFORE ORDERED that defendants' motion for summary judgment (Doc. #141) is granted in part and denied in part.

IT IS FURTHER ORDERED that plaintiffs' motion to overrule the motion for summary judgment (Doc. #164) is denied.

- 13 -

AO 72A  ⊕
(Rev. 8/82)

IT IS FURTHER ORDERED that plaintiffs' motion in support of the application of the Civil Rights Act of 1991 and request to conform the pretrial order (Doc. #172) is denied.

Dated this 16th day of March, 1992, at Kansas City, Kansas.

EARL E. O'CONNOR
United States District Judge

- 14 -

AO 72A
(Rev. 8/82)